# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| In re: TRANSPERFECT GLOBAL, INC. ) | C.A. No. 9700-CB |
| ) | |
| ) | |
| ELIZABETH ELTING, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | C.A. No. 10449-CB |
| ) | |
| PHILIP R. SHAWE and SHIRLEY SHAWE, ) | |
| Respondents, ) | |
| ) | |
| and ) | |
| ) | |
| TRANSPERFECT GLOBAL, INC. ) | |
| Nominal Party. ) | |

## ORDER DENYING RESPONDENTS' MOTION
## FOR CERTIFICATION OF INTERLOCUTORY APPEAL

WHEREAS:

A.    On February 15, 2018, the court entered a final order (the "Final Order") approving a securities purchase agreement (the "Sale Agreement"), pursuant to which Philip R. Shawe acquired Elizabeth Elting's 50% of Transperfect Global Inc. (the "Company" or "TransPerfect").[1] Paragraph 10 of the Final Order provides that the court has exclusive jurisdiction over the parties "for all matters relating to the Actions" (i.e., C.A. Nos. 9700 and 10449) including "the administration,

---

[1] Dkt. 1243.

interpretation, effectuation or enforcement" of the Sale Agreement and all orders entered in the Actions:

> Without impacting the finality of this Order and judgment, the Court retains continuing and exclusive jurisdiction over the parties to the Actions for all matters relating to the Actions, including the administration, interpretation, effectuation or enforcement of the Sale Agreement and the Related Agreements, and all orders of the Court in Civil Action Nos. 9700-CB and 10449-CB ....[2]

B.     On May 3, 2018, the Delaware Supreme Court affirmed the Final Order.[3] The sale closed four days later. The Custodian (Robert P. Pincus) resigned as a director of the Company in connection with the closing and thereafter continued to work on other custodial matters relating to the sale and to submit to the court monthly reports and petitions for approval of his fees and expenses.[4] After the closing, until May 2019, the Custodian sought payment for his post-closing work from an escrow account established in the Sale Agreement. The escrow account, which was funded 50% each by Shawe and Elting, was set up as a non-exclusive source to pay the fees and expenses of the Custodian and various other expenses.[5]

C.     In his May 8, 2019 report (the "May Report"), the Custodian advised the court and the parties that his expenses likely would be higher in the coming

---

[2] Final Order ¶ 10.

[3] *Elting v. Shawe*, 185 A.3d 694 (Del. 2018) (TABLE).

[4] *In re TransPerfect Global, Inc.*, 2019 WL 5260362, *5-6 (Del. Ch. Oct. 17, 2019).

[5] *See id.* at *4.

2

months due to demands made on his time relating to two lawsuits arising out of the sale process that were filed after the closing:

- An action Cypress Partners LLC filed against Shawe in New York state court to recover payment for financial advisory services Cypress provided to Shawe in connection with the sale of the Company. The Custodian was informed that discovery, including a deposition, would be sought from him in connection with the Cypress action.

- An action TransPerfect filed against Lionbridge Technologies, Inc. and H.I.G. Middle Market LLC in New York federal court, alleging that they had misappropriated trade secrets of the Company in connection with the sale process. The Custodian and several Skadden attorneys received litigation hold notices relating to the Lionbridge actions.

The Custodian explained in his May Report that, given the nature of the Cypress and Lionbridge actions, he intended to seek payment for fees and expenses incurred in connection with those lawsuits directly from TransPerfect instead of the escrow account.[6] The May Report cited three provisions from prior orders in the Actions as the basis for seeking payment from the Company.[7]

D. On June 17 and July 10, 2019, the Custodian filed fee petitions requesting that TransPerfect pay certain expenses related to the two lawsuits.[8] After hearing no objection from any party, the court entered orders on June 28 and July

---

[6] Dkt. 1315, Ex. 1.

[7] *Id.* at 10-11 n.7. The fees and expenses sought in the May Report are not in dispute.

[8] Dkt. 1324; Dkt. 1329.

3

17, 2019, respectively, approving these two fee petitions, which required TransPerfect to pay $65,203.85 to the Custodian (the "Fee Orders").[9]

E.     On August 13, 2019, TransPerfect sued the Custodian in Nevada state court, asserting claims for breach of fiduciary duty and declaratory relief.[10] TransPerfect sought damages against the Custodian relating to the $65,203.85 that the court had ordered the Company to pay in the Fee Orders.[11]

F.     On August 26, 2019, the Custodian filed a motion for civil contempt and sanctions against the Company and Shawe (together, "Respondents") requesting, among other relief, entry of an anti-suit injunction and *per diem* monetary sanctions to coerce dismissal of the Nevada action and compliance with the exclusive jurisdiction provision of the Final Order ("Contempt Motion").[12]

G.     On September 20, 2019, the Company amended its complaint in the Nevada action to add a third claim for specific performance under a Director Indemnification Agreement (the "DIA"), which provides additional indemnification and advancement rights to the Custodian in his capacity as a director of

---

[9] Dkt. 1327; Dkt. 1331.

[10] *In re TransPerfect Global*, 2019 WL 5260362, *8.

[11] *Id.*

[12] Dkt. 1337 ¶¶ 67, 72, 77-80. The Contempt Motion also sought relief with respect to the Company's failure to make payment under the Fee Orders. That issue was addressed in a separate ruling and is not the subject of the instant request for certification of an interlocutory appeal.

4

TransPerfect.[13] The DIA contains a non-exclusive jurisdiction provision and requires the indemnitee to "submit to the Company a written request" in order to obtain indemnification under the DIA.[14] The amended complaint in the Nevada action did not allege that the Custodian ever submitted any such written request.[15]

H. On October 17, 2019, the court issued a Memorandum Opinion (the "Opinion")[16] and Order (the "First Order")[17] adjudicating the Contempt Motion insofar as it concerned the Final Order. The Opinion explained that the court would rule in the future on the Contempt Motion insofar as it concerned the Fee Orders.[18]

I. In the Opinion, the court granted the Contempt Motion with respect to the Final Order, finding that "the filing of the Nevada action violated paragraph 10 of the Final Order by depriving the court of exclusive jurisdiction over the Respondents (as parties to these actions) for 'matters relating to the Actions'" in at least two ways:[19]

> First, the Nevada action specifically puts at issue—and thus deprives this court of exclusive jurisdiction over parties to these actions with respect to—the *interpretation* of the indemnification provisions in the 2015 Order, the Sale Order, the Final Order, and the Sale Agreement.

---

[13] *In re TransPerfect Global*, 2019 WL 5260362, at *3.

[14] *Id.* (quoting DIA §§ 5, 9) (internal quotation marks omitted).

[15] *In re TransPerfect Global*, 2019 WL 5260362, at *9; *see also* Dkt. 1381 at 84-85.

[16] *In re TransPerfect Global*, 2019 WL 5260362.

[17] Dkt. 1379.

[18] *In re TransPerfect Global*, 2019 WL 5260362, at *1.

[19] *Id.* at *10.

5

This is because, in order to grant the declaratory relief sought in the Nevada action, the Nevada court would need to construe the indemnification provisions in three of this court's orders and in the Sale Agreement . . . .

Second, the Nevada action specifically puts at issue—and thus deprives this court of exclusive jurisdiction over parties to these actions with respect to—*enforcement* of the Fee Orders. This is because, in order to award the damages and/or declaratory relief sought in the Nevada complaint, the Nevada court would have to consider the legal effect of the Fee Orders . . . .[20]

J.     In opposing the Contempt Motion, Respondents argued that the Nevada action did not violate the exclusive jurisdiction provision in the Final Order on the theory that the Nevada action sought relief based on the Custodian's status as a former director of the Company and thus implicated the DIA. The court rejected this contention for a number of reasons, including that there was clear and convincing evidence that the Custodian's involvement in the Cypress and Lionbridge actions related to his role as the overseer of the sale process and not as a former director of TransPerfect. That evidence included (i) allegations in the lawsuits that made clear they both related to the sale process, (ii) Shawe's own characterization of those lawsuits, and (iii) the admission of TransPerfect's General Counsel, Adam Mimeles, that "Mr. Pincus has not been involved in the Cypress or Lionbridge litigation in his capacity as an officer or director of TransPerfect."[21]

---

[20] *Id.* at *11.

[21] *Id.* (internal quotation marks omitted).

6

K.     The court also found that Respondents' violation of the Final Order was intentional and willful based on, among other things, (i) evidence "that Respondents knew they were concocting a false narrative in portraying" the Custodian's actions as relating to his role as a former director of the Company "in an apparent attempt to circumvent the exclusive jurisdiction provision in the Final Order," and (ii) the lack of any evidence that the Custodian requested indemnification under the DIA, which is a precondition for it to apply.[22]

L.     The court concluded that "entry of an anti-suit injunction and a *per diem* monetary sanction is necessary and warranted to coerce the dismissal of the Nevada action and [compel] compliance with the Final Order."[23]  The court also ordered "Respondents [to] bear all of the expenses, including reasonable attorneys' fees, that the Custodian has incurred because of Respondents' contempt" (the "Contempt Fee Award").[24]  The court has not yet determined the amount of the Contempt Fee Award, which undoubtedly will be the subject of future proceedings.

M.     On October 19, 2019, TransPerfect filed a Notice of Appeal from the Opinion and the First Order.[25]

---

[22] *Id.* at *12-13.

[23] *Id.* at *13.

[24] *Id.* at *15.

[25] *See* No. 439, 2019, Dkt. 1.

7

N.     On October 21, 2019, the court provided additional rulings denying the Contempt Motion with respect to the Fee Orders. During the teleconference, the court modified the process for submitting petitions for the payment of fees and expenses in the future.[26] Later that day, Shawe filed a separate Notice of Appeal from the Opinion and the First Order.[27] Also on October 21, the Company dismissed the Nevada action.

O.     On October 28, 2019, despite already having filed a Notice of Appeal from the Opinion and the First Order, TransPerfect filed an application for certification of an interlocutory appeal of the Opinion and the First Order.

P.     On November 1, 2019, the court issued a second order to implement its October 21, 2019 rulings along with a confidentiality order to govern future fee petitions (together, the "Second Order").[28] On November 12, 2019, Respondents filed a motion for certification of an interlocutory appeal of the Second Order.

NOW THEREFORE, the court having considered the parties' submissions, IT IS HEREBY ORDERED, ADJUDGED, and DECREED this 18th day of November 2019, as follows:

---

[26] Tr. 4-5, 15 (Oct. 21, 2019).

[27] *See* No. 441, 2019, Dkt. 1.

[28] Dkt. 1399 (Second Order).

### The Collateral Order Doctrine

1.      Respondents contend that the First Order is "a collateral order, appealable as a form of final judgment."[29] The applicability of the Collateral Order Doctrine is an issue outside the bounds of Rule 42 that is reserved for the Supreme Court.[30] Its applicability thus "must be addressed directly to the Supreme Court by the appellant" since "[a]ny discussion of the doctrine here would be advisory, and inappropriate."[31]

### Application for Certification of Interlocutory Appeal

2.      As a general matter, "the purpose of [Supreme Court] Rule 42 is to prevent wasteful piecemeal litigation from overwhelming the docket of the Supreme Court."[32] Accordingly, there is a strong presumption against granting a certification of an interlocutory appeal if it will lead to piecemeal litigation.

3.      Supreme Court Rule 42 provides that an interlocutory appeal will not be certified "unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[33] An opinion

---

[29] Resp't's Mot. ¶ 5.

[30] *See Stein v. Blankfein*, 2019 WL 3311227, at *2 (Del. Ch. July 23, 2019).

[31] *Id.*

[32] *Id.* at *1.

[33] Sup. Ct. R. 42(b)(i).

decides a substantial issue of material importance if it decides "an issue that 'relate[s] to the merits of the case.'"[34]

4.  The Opinion's determination that Respondents violated the Final Order when they sued the Custodian in the Nevada action is a collateral matter that does not address the merits of the Actions.[35] The Actions primarily concerned claims under *8 Del. C.* § 226 for the appointment of a custodian to sell the Company to resolve stockholder and board level deadlocks. The court fully adjudicated those and all other claims the parties asserted in the Actions after trial in a series of decisions, which culminated in a sale transaction that closed in May 2018.[36] The Opinion at issue here decided an issue that arose in the aftermath of the sale of the Company that is unrelated to the merits of any of the claims adjudicated in the

---

[34] *Wenske v. Blue Bell Creameries, Inc.*, 2019 WL 4677378, at *2 (Del. Ch. Sept. 25, 2019) (quoting *Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 301 A.2d 87, 87 (Del. 1973)).

[35] *See Campbell v. Eagle Force Holdings, LLC*, 213 A.3d 88 (Del. 2019) (denying motion for certification because finding a party in contempt of an interlocutory order "did not 'speak[] directly to the merits of the plaintiffs' claims'") (quoting *Scott Sider v. Hertz Glob. Hldgs, Inc.*, 2019 WL 2501481, at *4 (Del. Ch. June 17, 2019), *appeal refused* 213 A.3d 88 (Del. 2019); *TowerHill Wealth Mgmt, LLC v. Bander Family P'ship, L.P.*, 2008 WL 4615865, at *2 (Del. Ch. Oct. 9, 2008) (denying motion for certification because "whether TowerHill's claims should be heard in arbitration or this court does not go to the actual merits of those claims"), *appeal refused*, 962 A.2d 256 (Del. 2008).

[36] *See In re TransPerfect Global, Inc.*, 2018 WL 904160 (Del. Ch. Feb. 15, 2018), *aff'd sub nom. Elting v. Shawe*, 185 A.3d 694 (Del. 2018); *Shawe & Elting, LLC*, 2015 WL 4874733 (Del. Ch. Aug. 13, 2015), *aff'd sub nom. Shawe v. Elting*, 157 A.3d 152 (Del. 2017).

10

Actions. Accordingly, the Opinion did not decide a substantial issue of material importance for purposes of Supreme Court Rule 42.

5. Supreme Court Rule 42 further states that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal process of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[37] Rule 42 sets forth eight criteria that "the trial court should consider" when evaluating an interlocutory appeal.[38] The rule instructs that the "trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs," but "[i]f the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[39]

6. Respondents argue that only two of the eight criteria in Rule 42(b)(iii) have been satisfied, *i.e.* that the Opinion and First Order "sustained the controverted jurisdiction of the trial court" and that an "interlocutory appeal would serve considerations of justice."[40]

7. Rule 42(b)(iii)(D) asks the trial court to consider whether the "interlocutory order has sustained the controverted jurisdiction of the trial court." The term "trial court" appears in Rule 42 over thirty times and plainly refers to a

_____

[37] Sup. Ct. R. 42(b)(ii).

[38] Sup. Ct. R. 42(b)(iii).

[39] *Id.*

[40] Motion ¶ 12.

11

trial court in the State of Delaware—in this case, the Court of Chancery.[41] Respondents do not dispute—nor could they—that the Court of Chancery has jurisdiction to enforce its own orders. Accordingly, this factor is irrelevant to Respondents' request for certification of an interlocutory appeal of the Opinion and First Order, which simply enforced paragraph 10 of the Final Order.

8. Turning to Rule 42(b)(iii)(H), interlocutory review at this time would not serve the interests of justice. To the contrary, certifying an interlocutory appeal now would "result in the piecemeal appeal of factually and legally related issues and would be contrary to the interest of justice and the orderly procession of matters before this court."[42]

9. The risk of piecemeal appeals is manifest. On November 12, just fifteen days after filing a motion for certification of an appeal of the Opinion and First Order, TransPerfect (joined by Shawe) filed a second motion for certification

---

[41] *See, e.g.*, Supr. Crt. Rule 42(b) ("No interlocutory appeal will be certified by the trial court … unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."), (c) ("application … shall be made in the first instance to the trial court"), (d)(i)("notice of appeal may be filed . . . after the filing of the application . . . in the trial court"), (e) ("Continuation of Other Proceedings in the Trial Court"); *see also TowerHill*, 2008 46158615, at *2-3 (finding no issue of controverted jurisdiction where the Court of Chancery was determined to have subject matter jurisdiction).

[42] *Krahmer v. Christie's Inc.*, 2006 WL 4782303, at *1 (Del. Ch. June 15, 2006), *appeal refused*, 906 A.2d 806 (Del. 2006) (TABLE).

of an interlocutory appeal of the Second Order.[43]  In addition, two other matters directly related to the Opinion and the First and Second Orders remain outstanding: (i) the amount of the Contempt Fee Award and (ii) the resolution of any objections Respondents may make to the Fee Orders.  The court believes that further proceedings to resolve both of these matters are inevitable.

10.     Given the prospect of piecemeal appeals over factually and legally related matters, the costs of certifying an interlocutory appeal of just the Opinion and the First Order clearly outweigh the benefits of doing so.  In the court's opinion, the most efficient and just course to resolve this chapter of the Actions would be to resolve first the outstanding issues referenced in paragraph 9 above and, thereafter, to permit a single interlocutory appeal of those issues along with any appeal of the Opinion and both the First and Second Orders.  Accordingly, Respondents' motion for certification of an interlocutory appeal of just the Opinion and First Order is DENIED.

_____
Chancellor

---

[43] Dkt. 1405. Respondents also requested that the court direct the entry of final judgment under Rule 54(b) of each future order requiring payment. The court rejected this request given the policy against piecemeal appeals. Dkt. 1398.

13